UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AINSLEY PARTRIDGE,

        Petitioner,               Case Number: 2:13-CV-12533
                                                    HON. ARTHUR J. TARNOW

v.

CARMEN PALMER,

        Respondent.
_____/

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS**

This matter is before the Court on Petitioner Ainsley Partridge's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Partridge challenges his convictions for two counts of second-degree home invasion and two counts of breaking and entering. He challenges the convictions on these grounds: insufficient evidence was presented to sustain convictions, bind over was based upon insufficient evidence, and he recieved ineffective assistance of counsel. Respondent, through the Attorney General's Office, has filed an answer in opposition to the petition arguing that Partridge's ineffective assistance of counsel claim is not properly exhausted and that all of the claims are meritless. The Court denies the petition and declines to issue a certificate of appealability.

**I.    Background**

Partridge's convictions arise from thefts from three homes in Wheatland Township, Michigan, in February 2011.

Douglas Hawkins testified pursuant to a plea agreement which allowed him to plead guilty to attempted breaking and entering and dismissed numerous other charges in exchange for testimony against Partridge. Hawkins testified that in early 2011, Partridge paid him to drive Partridge to several houses in Hillsdale County. Hawkins believed that Partridge needed him to be the driver because Partridge did not have a driver's license. They used Petitioner's girlfriend Amanda Dohm's minivan. According to Hawkins, Partridge told him that they would be going to homes to collect metal for scrapping.

Hawkins testified that he first drove Partridge to a home on Hoxie Road. Hawkins remained in the vehicle. Partridge exited with copper cutters and a large screwdriver. Partridge returned a short time later with a television and a grill. Hawkins helped Partridge load the grill into the vehicle. Partridge then entered a barn on the property. He loaded several things from the barn into the van. Hawkins drove Partridge back to Dohm's property, where Partridge unloaded the items into Dohm's garage.

A few weeks later, Hawkins drove Partridge to a home on Wheatland Road. Hawkins again remained in the vehicle while Partridge approached the home with a pry bar. When Partridge returned to the vehicle, he was carrying a suitcase which Hawkins later discovered was full of jewelry.

Finally, Hawkins drove Partridge to a home on Waldron Road, where the men followed their routine of Hawkins remaining in the car while Partridge approached the house and returned a short time later with items he loaded into the van. This time, Partridge returned with a rifle, air compressor, silverware and a teapot, which Partridge

2

stored in Dohm's garage.

Linda Duncan, an employee with International Diamonds, testified that her company purchases jewelry from customers which, after a nine day waiting period, the company melts down. She testified that Partridge sold jewelry to her and her coworkers on four separate occasions in January and February 2011. Company policy required Duncan to record a customers full name, driver's license number, and date of birth on receipts. Duncan and her coworkers did so and these receipts were admitted into evidence.

Gary Ward, a detective with the Lenawee County Sheriff's Department, testified that, on March 18, 2011, he received a tip from an informant that Harry Briskey, who had several outstanding warrants, was living in a home with a woman named Amanda Dohm. Based upon this information, deputies set up surveillance of Dohm's home. Detective Ward discovered that Partridge was living at the home and was not supposed to be in contact with Dohm. Partridge was arrested as he was leaving the Dohm residence.

The informant had alerted police to a trailer kept on Hawkins' property where he believed some of the stolen property may have been stored. Hawkins consented to a search of the trailer on his rural property. Police found many items in the trailer that were later identified as having been stolen from the Hoxie, Wheatland, and Waldron properties.

A jury in Hillsdale County Circuit Court found Partridge guilty of two counts of second-degree home invasion, and two counts of breaking and entering. On November 7, 2011, he was sentenced to concurrent sentences of 14 to 30 years' imprisonment for each

of the home invasion convictions and 8 to 20 years for each breaking and entering conviction.

Partridge filed an appeal of right in the Michigan Court of Appeals, raising these claims: (i) insufficient evidence; (ii) bind-over was not supported by sufficient evidence; (iii) ineffective assistance of counsel. The Michigan Court of Appeals affirmed Partridge's convictions. *People v. Partridge*, No. 307248 (Mich. Ct. App. Nov. 27, 2012). He filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Partridge*, 493 Mich. 955 (Mich. Apr. 1, 2013).

Partridge then filed the pending habeas petition. He raises these claims:

> I.  Prosecution failed to present evidence sufficient to sustain his convictions.
>
> II. The judge abused his discretion when he bound the defendant over on all charges due to insufficient evidence to bind over.
>
> III. Counselor for defense did not provide effective assistance, due to failure to object to prosecution opening and closing statements, also counsel failed to object to prosecutor's coaching (sic) for the chief witness's credibility.

**II.    Standard of Review**

This habeas petition is reviewed under the exacting standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the state adjudication of the claim either:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in

5

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact *and* that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Discussion

#### A. Sufficiency of the Evidence Claim

In his first habeas claim, Partridge argues that insufficient evidence was presented to establish his identity as the perpetrator.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he

*Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006), quoting *Jackson*, 443 U.S. at 324 n.16.

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, citing *Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789. Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of second-degree home invasion are "(1) a breaking, (2) an entry, and (3) specific intent to commit a felony or a listed crime." *United States v. Howard*, 327 F. App'x 573, 575 (6th Cir. 2009). The elements of breaking and entering are that the defendant: (1) broke into a building, (2) entered the building, and (3) at the time of the breaking and entering, he intended to commit a larceny or felony. *See* Mich. Comp. Laws § 750.110; *People v. Adams*, 202 Mich.App. 385, 390, 509 N.W.2d 530 (1993). Partridge argues that there was insufficient evidence to establish that he was the perpetrator. Under Michigan law, "[t]he identity of a defendant as the

7

perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003) (*citing People v. Turrell*, 181 N.W.2d 655, 656 (Mich. Ct. App. 1970)).

In this case, the Michigan Court of Appeals, applying the correct constitutional standard, found sufficient evidence to establish Partridge's identity as the perpetrator. The Michigan Court of Appeals relied on the following evidence in reaching this conclusion: Hawkins' testimony that Partridge directed him to drive to the target houses and Partridge broke into the homes and placed the stolen items in the vehicle driven by Hawkins; documentary evidence showing that Partridge sold multiple pieces of jewelry during the relevant time period; Partridge's girlfriend's testimony that she found a television she suspected was stolen in her living room; and Hawkins' testimony concerning his previously existing back injury would have made it difficult for him to execute the break-ins and remove the heavier items. *Partridge*, slip op at 2. The Michigan Court of Appeals rejected Partridge's argument that Hawkins was not credible because he provided the testimony in order to obtain leniency, finding that the credibility of witnesses was for the jury to decide. *Id.*

The jury was free to accept or reject Hawkins' testimony in part or in its entirety. "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003) (*citing Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "[A] reviewing court 'faced with a record of historical facts that

supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting Jackson, 443 U.S. at 326). Viewed most favorably to the prosecution, the evidence presented at trial allowed the factfinder to determine beyond a reasonable doubt that Partridge was the perpetrator in this case. Habeas relief is not warranted on this claim.

### B.     Improper Bindover Claim

Partridge next argues that the trial court erred in finding sufficient evidence was presented at the preliminary examination to bind him over for trial. This claim does not present a cognizable basis for habeas relief. There is no general constitutional right to a preliminary examination before trial. *See Gerstein v. Pugh*, 420 U.S. 103, 125 n. 26 (1975); *Harris v. Neil*, 437 F.2d 63, 64 (6th Cir. 1971). A state court's failure to even hold a preliminary examination does not present a cognizable habeas claim. *See Scott v. Bock*, 241 F. Supp.2d 780, 793 (E.D. Mich. 2003) (Lawson, J.). A claim that the evidence offered at a preliminary examination was insufficient for a finding of probable cause is not cognizable on habeas review. *See David v. Lavinge*, 190 F. Supp. 2d 974, 978 (E.D. Mich. 2002) (O'Meara, J.); *Prowell v. Overton*, No. 93-1949, 1994 WL 146842, * 1 (6th Cir. April 22, 1994). Further, it is an "established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein*, 420 U.S. at 119 (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)). Therefore,

"although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420 U.S. at 119. Because Partridge is now incarcerated pursuant to a valid conviction, he cannot challenge the preliminary procedures employed prior to his trial. Habeas relief is denied on this claim.

### C. Ineffective Assistance of Counsel Claim

Finally, Partridge argues that his trial attorney rendered ineffective assistance by failing to object to the prosecutor's opening and closing statements and failing to object to the prosecutor's vouching for the credibility of prosecution witnesses. Respondent first argues that these claims are unexhausted. The Court is not persuaded by Respondent's argument. The petition clearly states that all of the claims raised were first raised in the Michigan Court of Appeals and Michigan Supreme Court. Petition at 2. In setting forth the procedural history for this case, Respondent also states that Petitioner's habeas claims were raised in both Michigan appellate courts. Answer at 17-18. Therefore, the Court finds Petitioner's ineffective assistance of counsel claims have been exhausted.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent

assistance." *Id.* at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.* at 123 (internal quotation omitted).

Partridge argues that counsel should have objected to the prosecutor's discussion of Doug Hawkins' physical limitations in the prosecutor's opening and closing statements. The prosecutor stated that Hawkins' physical impairments would have made it impossible for Hawkins to carry out these crimes without an accomplice and that Partridge was that accomplice. Hawkins testified that he broke his back approximately 15 years prior to the trial, which led to many physical problems making it difficult for him to move around. He testified that he had to move out of his trailer home because his

11

physical impairments made it difficult for him to take care of himself. The prosecutor's opening statement and closing argument accurately described the testimony given at trial by Hawkins. Partridge disagrees with the extent Hawkins' physical impairments impeded his ability to carry out these crimes by himself. But this disagreement does not render the prosecutor's statements improper where the statements were supported by the record and counsel was not ineffective in failing to object.

Next, Partridge argues that the prosecutor committed misconduct by vouching for the credibility of Hawkins. Prosecutors may not vouch for a witness's credibility. Prosecutorial vouching and an expression of personal opinion regarding the accused's guilt "pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985).

"[T]he *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker*, — U.S. —, 132 S.Ct. at 2155, (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The prosecutor did not imply that he had some special information about Hawkins' testimony or credibility. Instead, considered in its entirety, the prosecutor's argument asked the jury to consider

Hawkins' motives for testifying and the consistency of his testimony. The prosecutor argued that Hawkins' testimony was supported by the way he physically moved to and from the stand. The prosecutor advised the jury that he did not have any special knowledge about the truth of Hawkins' description of his physical limitations and that that was a question for the jury to decide. He also asked the jury to apply their own common sense to determine whether a person with Hawkins' described limitations could have carried out the home invasions by himself. None of the prosecutor's arguments amount to vouching for the witness's testimony. Therefore, counsel was not ineffective in failing to object. Habeas relief is denied on this claim.

## IV.     Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## V.     Conclusion

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED. Furthermore, the Court DENIES a certificate of appealability. The Court finds Petitioner may proceed on appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated: August 16, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 16, 2016, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant